**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**




APPELLANT PRO SE:

**DONALD WARE**
Pendleton, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

---

# IN THE
# COURT OF APPEALS OF INDIANA

---

DONALD WARE,

Appellant-Defendant,

vs.

STATE OF INDIANA,

Appellee-Plaintiff.

No. 49A02-1304-PC-370

---

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
The Honorable Amy J. Barbar, Magistrate
Cause No. 49G02-0508-PC-130877

---

**January 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Donald Ware ("Ware") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred when it found that he was not denied the effective assistance of trial counsel and appellate counsel. He raises the following, restated issues for our review:

I. Whether Ware's trial counsel was ineffective for failing to submit an alternative jury instruction for murder on the basis that the instruction given omitted the essential element of the absence of sudden heat and for failing to object to the jury instruction regarding the consideration of lesser included offenses; and

II. Whether Ware's appellate counsel was ineffective for failing to raise an issue regarding whether Ware's convictions for two counts of criminal recklessness violated double jeopardy.

We affirm.

**FACTS AND PROCEDURAL HISTORY**

The facts supporting Ware's convictions as set forth by this court in his direct appeal are as follows:

> On July 24, 2005, a group of teenage boys gathered in an area near the intersection of Rockville Road and Girls School Road in Marion County for the purpose of throwing eggs at passing cars. At one point, the boys struck Lisa Baker's car. Baker stopped and began yelling that she was going to call the police. The boys then struck a pickup truck, which was later determined to be driven by Ware. Ware stopped, exited his truck, and yelled at the boys. He then returned to his truck and drove to where Baker had stopped her car. While talking to Baker, Ware made racially derogatory comments about the boys and told Baker that he had a rifle and was going to get the boys. Ware asked Baker where the boys were, and after Baker pointed in the general direction, Ware drove after the boys. While the boys were running from Ware's truck, two shots were fired, killing Brandon Dunson ("Dunson") and wounding Michael Dyer ("Dyer").
>
> Tracy Nash was the first police officer to arrive on the scene. Officer Nash was unaware that there had been a shooting, and was on the scene to investigate reports of boys throwing eggs at passing vehicles. He noticed

Ware's truck because it was traveling at a high rate of speed and saw it pull into a public storage facility's parking lot. When Officer Nash pulled in behind the truck, Ware exited his truck and approached the driver's side of Officer Nash's vehicle. Ware told Officer Nash that he had been struck in the head by an egg, and told Officer Nash that the boys who had thrown the eggs were running behind the public storage facility. Officer Nash told Ware not to leave, and went to look for the boys. When Officer Nash returned to the parking lot after an unsuccessful search for the boys, Ware had left the scene.

Dunson's friends who were running with him were afraid of being caught and did not stop when Dunson was shot. Later that night, one of Dunson's friends who had not participated in the egging became concerned about Dunson and went to look for him. He found Dunson's body in the grass near the public storage facility and called the police. After learning that a shooting had occurred, the police turned their attention to identifying the man with whom Baker and Officer Nash spoke. Baker was shown a photographic array and initially identified, with ninety percent confidence, Chester Williams as the man with whom she spoke. After being shown a second photographic array, Baker identified Williams with one hundred percent confidence. However, further investigation ruled out Williams as a suspect. A few days later, the police received an anonymous phone call indicating that a man named "Donny" was responsible for shooting Dunson, and that he lived in Avon, Indiana, and drove a red pickup truck. Police then began surveillance of Ware's house and determined that Ware was "Donny." Officers then showed a photographic array to Officer Nash, who identified Ware as the man with whom he spoke the night of the shooting. The police then applied for a warrant to search Ware's house and vehicle.

. . . .

After receiving the search warrant, officers found eggshells and residue in and on Ware's truck, and found roughly forty-nine grams of marijuana in Ware's residence. No gun was recovered during this search or throughout the remainder of the investigation. Officers took [Terri] Eberwein, who was at the residence at the time of the search, to the police station for questioning. Eberwein told officers that upon returning home the night of the shooting, Ware had told her he had been egged and had "said something about, you know shooting but he didn't say at what or anything," and that he said "he fired some rounds or some shots." *State's Ex.* 113. The next day, officers arrested Ware without a warrant and took him in for questioning. Ware admitted being on the scene that night and speaking to Baker and Officer Nash, but denied shooting at the boys or having a gun.

> Prior to trial, Ware filed a motion to suppress the evidence obtained as a result of the search and arrest, arguing that probable cause supported neither. After a hearing, the trial court denied Ware's motion. At trial, the boys who had participated in the egging testified. All the boys testified that they saw a red or dark-colored pickup truck chasing them. Three of the boys testified that at some point while they were leaving the scene they saw a truck driving around in the area with someone standing in the truck's bed. The jury also heard the testimony of Officer Nash and Baker, who both identified Ware as the person with whom they spoke that night. Eberwein also testified, and admitted telling officers that Ware had mentioned shooting a gun the night of the incident, but said that when she gave her statement to police, she had been intimidated, was under the influence of prescription and illegal drugs, and had falsified some information in her statement. The jury found Ware guilty of murder, battery, and two counts of criminal recklessness.
>
> Ware filed a motion for the trial court to enter alternative final judgment and a motion for a new trial. The trial court denied both motions at the beginning of the sentencing hearing. The trial court sentenced Ware to sixty years for murder, six years for battery, and two years for each of the criminal recklessness counts. The trial court then ordered that all sentences be served consecutively based on the number of victims, for an aggregate sentence of seventy years.

*Ware v. State*, 859 N.E.2d 708, 713-15 (Ind. Ct. App. 2007), *trans. denied*.

During discussion of the jury instructions at trial, Ware's trial counsel, Kathleen Sweeney ("Sweeney"), objected to the voluntary manslaughter instruction on two grounds: (1) the instruction should not have been given because voluntary manslaughter was not an inherently included offense; and (2) the instruction was misleading. *Trial Tr*. at 908-09. At a later conference regarding the instructions, Sweeney maintained that the instruction should not be given, but withdrew the objection that the language was misleading. *Id*. at 1156-57.

After Ware was found guilty of murder, he filed a motion under Indiana Trial Rule 50 asking for the trial court to find him guilty of voluntary manslaughter as a lesser-

included offense of murder. The motion also requested that the trial court find that Ware was not guilty of the two counts of Class D felony criminal recklessness. Ware also filed a motion for a new trial, in which he stated that his defense theory at trial was, in part, to show that Williams was the shooter. At sentencing, Sweeney again moved for the trial court to enter judgment on voluntary manslaughter instead of murder. *Id*. at 1327-28.

Ware appealed and raised four issues on direct appeal: (1) evidence obtained through a search performed pursuant to a search warrant and statements made following a warrantless arrest were not properly admitted; (2) evidence that the State did not disclose to Ware prior to trial was not properly admitted; (3) Ware's convictions were not supported by sufficient evidence; and (4) Ware's sentence was inappropriate. Ware's convictions were affirmed by this court. Ware sought rehearing and transfer, which were both denied.

Ware filed his pro se petition for post-conviction relief on April 9, 2012. On September 19, 2012, Ware filed an amended petition for post-conviction relief, alleging that his trial counsel was ineffective for allowing the trial court to give defective jury instructions on murder, voluntary manslaughter, reckless homicide and sudden heat and for failing to move to vacate the murder conviction for an entry of conviction for voluntary manslaughter under Indiana Trial Rule 59(J).[1] Ware also alleged that his appellate counsel was ineffective for failing to raise on direct appeal the issue of double jeopardy regarding his two convictions for criminal recklessness.

[1] We note that, although Ware raised an issue regarding the failure to move to vacate his murder conviction in his petition for post-conviction relief, he does not raise the denial of relief on such issue here on appeal. Therefore, we do not reach that issue here.

On November 14, 2012, an evidentiary hearing was held on Ware's petition. At trial, Ware had been represented by both Jackie Butler ("Butler") and Sweeney. At the post-conviction hearing, Butler testified that the defense theory at trial was that Ware did not commit the crimes. *P-CR Tr*. at 6, 21. Butler stated that she conferred with both Ware and his family in developing the defense theory, and she believed that Ware understood the legal issues. *Id*. at 6, 7. Ware's attorney on direct appeal, Ann Sutton ("Sutton") also testified at the hearing. She stated that she conferred with Ware and both trial attorneys about the issues to raise on appeal, including the theory that Ware was innocent. *Id*. at 24. Sutton testified that she raised an issue regarding sufficiency of the evidence as to one of the criminal recklessness convictions but did not challenge both convictions. *Id*. at 25-26. She further testified that she did not recall why she did not challenge the criminal recklessness convictions based on double jeopardy. *Id*. at 28. On April 2, 2013, after receiving proposed findings of fact and conclusions of law from both sides, the post-conviction court denied Ware's petition for post-conviction relief. Ware now appeals.

## DISCUSSION AND DECISION

Ware argues that the post-conviction court erroneously denied his petition for post-conviction relief. Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for

subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

## I. Ineffective Assistance of Trial Counsel

When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State*, 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and

Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Id*. (citing *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998)). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. *Id*. (citing *Wentz v. State*, 766 N.E.2d 351, 360 (Ind. 2002)).

Ware first contends that his trial counsel was ineffective for failing to submit an alternate jury instruction for murder because the instruction given omitted the essential element of the absence of sudden heat. He argues that, when evidence supporting the existence of sudden heat has been presented, the State must prove the absence of sudden heat to obtain a murder conviction. Ware asserts that, here, the instructions given by the trial court failed to properly instruct the jury, and his trial counsel did not tender an instruction that would have informed the jury as to the State's burden. He therefore claims that he was prejudiced because the improper instructions potentially caused a wrongful conviction for murder, and the post-conviction court erred in finding his counsel was not ineffective.

It is well settled in Indiana that sudden heat is not an element of voluntary manslaughter. *Eichelberger v. State*, 852 N.E.2d 631, 636 (Ind. Ct. App. 2006) (citing *Boesch v. State*, 778 N.E.2d 1276, 1279 (Ind. 2002)), *trans. denied.* Rather, once a defendant presents evidence of sudden heat, the State bears the burden of disproving its existence beyond a reasonable doubt. *Id.* (citing Ind. Code § 35-42-1-3(b) ("The existence of sudden heat is a mitigating factor that reduces what otherwise would be murder under section 1(1) of this chapter to voluntary manslaughter.")). An instruction assigning the burden of affirmatively proving sudden heat to the State is erroneous as a matter of law. *Id.* Additionally, a trial court's failure to give a jury instruction explaining that the State must negate the presence of sudden heat beyond a reasonable doubt, when requested, necessitates the granting of a new trial. *Id*. (citing *Harrington v. State,* 516 N.E.2d 65, 66 (Ind.1987)). Our Supreme Court has stated that the State must prove the absence of sudden heat to obtain a murder conviction when the defendant has asserted the issue at trial, but added that it is well settled in Indiana that there is no implied element of the absence of sudden heat on a murder charge. *Conner v. State*, 829 N.E.2d 21, 24 (Ind. 2005).

In the present case, the instructions at issue read as follows:

> INSTRUCTION NO. 21A
>
> On occasion, either because of the nature of the crime(s) which is/are charged or because of the evidence that is presented during the trial, the law permits the Jury to consider whether the Defendant is guilty of certain charges that are not explicitly mentioned in the Information. These charges are called *included offenses*. They are called included offenses because they are offenses which *necessarily* must be committed as a part of the charged offense or because the evidence presented during trial can lead to a finding that the crime which was committed was as serious, or *less* serious, than the crime charged.

If you find the Defendant not guilty of the charged offense, then you may consider whether the Defendant is guilty of the included offense.

All of the instructions that I give you are to be applied to your deliberations whether you are considering a charged offense or an included offense. In other words, you may not convict the Defendant of any crime unless the State has proven the crime's applicable elements beyond a reasonable doubt.

You must **not** look upon the included offense(s) as an opportunity to compromise the differences among yourselves.

INSTRUCTION NO. 21B

The crime of Murder, a felony, with which the Defendant is charged in Count 1, is defined as follows:

"A person who knowingly or intentionally kills another human being commits Murder, a felony."

Included in the charge of Murder in this case is the crime of Voluntary Manslaughter that is defined as follows:

"A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary Manslaughter, a Class B felony. The offense is a Class A felony if it is committed by means of a deadly weapon."

Sudden heat is a mitigating factor that reduces what otherwise would be Murder to Voluntary Manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

To convict the Defendant of Murder, the State must prove each of the following elements beyond a reasonable doubt:

1. The Defendant, Donald Ware,
2. knowingly
3. killed Brandon Chadwick Dunson-Taylor, another human being.

If the State failed to prove each of these elements beyond a reasonable doubt, you must find the Defendant not guilty.

> If the State did prove each of these elements beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt that the Defendant was not acting under sudden heat, you may find the Defendant guilty of Voluntary Manslaughter, a Class B felony, as covered under Count 1. If your finding is that the Defendant committed Voluntary Manslaughter, not Murder, and if you further find beyond a reasonable doubt that the offense was committed by means of a deadly weapon, you may find the defendant guilty of Voluntary Manslaughter, a Class A felony, as covered under Count 1.
>
> If the State did prove beyond a reasonable doubt that the Defendant knowingly killed Brandon Chadwick Dunson-Taylor, and the State also did prove beyond a reasonable doubt that the Defendant acted without sudden heat, you may find the Defendant guilty of Murder, a felony, as charged in Count 1.
>
> If you find the Defendant did not commit Murder or either type of Voluntary Manslaughter, then you may consider whether or not the Defendant committed the crime of Reckless Homicide, a Class C felony. Reckless Homicide, a Class C felony covered under Count 1, is defined as follows:
>
> "A person who recklessly kills another human being commits Reckless Homicide, a Class C felony."
>
> To convict the Defendant, the State must prove each of the following elements beyond a reasonable doubt:
>
> 1. The Defendant, Donald Ware,
> 2. recklessly
> 3. killed Brandon Chadwick Dunson-Taylor.
>
> If the State failed to prove each of these elements beyond a reasonable doubt, then you may find the Defendant not guilty.
>
> If the State did prove each of these elements beyond a reasonable doubt, then you may find the Defendant [guilty] of Reckless Homicide, a Class C felony covered under Count 1.

*Appellant's App*. at 60-63.

Ware's trial counsel objected to the voluntary manslaughter instruction on two grounds: (1) voluntary manslaughter was not an inherently-included offense in this case;

and (2) the instruction was misleading. *Trial Tr*. at 908-09. At a later instruction conference, his attorney withdrew the objection that the language of the instruction was misleading, but maintained that the objection that the instruction should not be given because voluntary manslaughter was not an inherently-included offense. *Id*. at 1156-57. Ware's trial counsel did not submit any alternative instructions.

Here, the jury was instructed that, in order to prove the offense of murder, if there is evidence of sudden heat, the State bears the burden of negating the existence of sudden heat beyond a reasonable doubt. The instruction gave the jury the option of finding Ware guilty of voluntary manslaughter as an alternative to murder if the State failed to prove beyond a reasonable doubt that he was not acting under sudden heat. The instruction also correctly informed the jury that the State had to prove beyond a reasonable doubt both that Ware had killed the victim and that he had acted without sudden heat before it could find Ware guilty of murder. Therefore, the jury was properly instructed that the burden remained with the State for proving lack of sudden heat. Ware's trial counsel was not ineffective for not proposing an alternative instruction.

Ware relies on *Sanders v. Cotton*, 398 F.3d 572 (7th Cir. 2005) and *Eichelberger*, 852 N.E.2d 631, to support his argument that his trial counsel should have proposed an alternative instruction. However, we find those two cases to be distinguishable from the present case. In both of those cases, the jury instructions incorrectly included the existence of sudden heat as an element of voluntary manslaughter and informed the jury that the State had to prove the existence of sudden heat beyond a reasonable doubt. *Sanders*, 398 F.3d at 582; *Eichelberger*, 852 N.E.2d at 635. Further, in those cases, even though the voluntary

manslaughter instruction stated that the existence of sudden heat was a mitigating factor that reduced what would otherwise be murder to voluntary manslaughter, the jury was not properly informed that the State had the burden of proof for showing the absence of sudden heat to obtain a murder conviction. *Sanders*, 398 F.3d at 582-83; *Eichelberger*, 852 N.E.2d at 639. Here, the instruction given properly instructed the jury that the State had to prove the absence of sudden heat beyond a reasonable doubt before the jury could find Ware guilty of murder. We, therefore, conclude that Ware's trial counsel was not deficient for not proposing an alternative jury instruction, and the post-conviction court did not err in denying Ware's petition based on this contention.

Ware next argues that his trial counsel was ineffective for allowing misleading jury instructions that precluded the jury's consideration of lesser included offenses. He contends that Instruction 21A was misleading because it was both conditional and optional, which allowed the jury to preclude the consideration of lesser included offenses. He asserts that the consideration of the included offenses was conditional on the finding of not guilty for murder and optional because of the non-mandatory phrase, "you may consider." *Appellant's Br*. at 17. He claims that he was prejudiced by the jury instructions because the errors contained in them prevented a reasonable jury from finding him guilty of voluntary manslaughter instead of murder.

Jury instructions are considered as a whole and in reference to each other. *Santiago v. State*, 985 N.E.2d 760, 761 (Ind. Ct. App. 2013), *trans. denied*. Here, Instruction 21A was not misleading because Instruction 21B simultaneously instructed the jury of the State's burden of proving the absence of sudden heat before the jury could find Ware guilty

of murder. Further, we also find the present case distinguishable from *Roberson v. State*, 982 N.E.2d 452 (Ind. Ct. App. 2013), on which Ware relies for his argument. There, the jury was instructed on the elements of murder and informed that it did not need to consider the lesser-included offenses, including voluntary manslaughter, if it found that the State had proven the elements of murder, and it was not informed that sudden heat would mitigate murder to voluntary manslaughter. *Id*. at 460. However, in the present case, Instruction 21B did inform the jury that the State had the burden of disproving the existence of sudden heat before the jury could find Ware guilty of murder. *Appellant's App*. at 61-62. We, therefore, conclude that the jury was sufficiently instructed, and Ware's trial counsel was not deficient for not objecting to the jury instructions as misleading. The post-conviction court did not err in finding that Ware's trial counsel was not ineffective and in denying Ware's argument as to the performance of his trial counsel.

## II. Ineffective Assistance of Appellate Counsel

Ware contends that he received the ineffective assistance of his appellate counsel. The standard of review for a claim of ineffective assistance of appellate counsel is the same as that for trial counsel. *Massey v. State*, 955 N.E.2d 247, 257 (Ind. Ct. App. 2011) (citing *Bieghler v. State*, 690 N.E.2d 188, 192 (Ind. 1997), *cert. denied*, 525 U.S. 1021 (1998)). The petitioner must show that counsel's performance was deficient in that counsel's representation fell below an objective standard of reasonableness and that but for appellate counsel's deficient performance, there is a reasonable probability that the result of the appeal would have been different. *Id*. at 257-58 (citing *Overstreet v. State*, 877 N.E.2d 144, 165 (Ind. 2007), *cert. denied*, 555 U.S. 972 (2008)). As with ineffective assistance of

trial counsel claims, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id*. at 258 (citing *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)). There are three different grounds for claims of ineffective assistance of appellate counsel: (1) counsel's actions denied the defendant access to appeal; (2) counsel failed to raise issues on direct appeal resulting in waiver of those issues; and (3) counsel failed to present issues well. *Id*. (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1203 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002)).

Ware argues that his appellate counsel was ineffective for failing to raise the issue of double jeopardy on his two Class D felony criminal recklessness convictions. He asserts that these two convictions violated double jeopardy because the same evidence used to convict him of the offenses of murder and battery, the two shots fired, was the same evidence used to convict him of the two criminal recklessness charges. Ware contends that this double jeopardy issue was significant and obvious from the record and clearly stronger than the issues actually raised by his appellate counsel on direct appeal. He, therefore, claims that his appellate counsel was ineffective, and his post-conviction petition should have been granted.

"Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal." *Reed v. State*, 856 N.E.2d 1189, 1196 (Ind. 2006). This is so because the choice of what issues to raise on appeal is one of the most important strategic decisions appellate counsel makes. *Massey*, 955 N.E.2d at 258 (citing *Stevens v. State*, 770 N.E.2d 739, 760 (Ind. 2002), *cert. denied*, 540 U.S. 830

(2003)). To establish deficient performance for failing to raise an issue, the petitioner must show that the unraised issue was significant and obvious on the face of the record and that it was clearly stronger than the issues raised. *Id.* (citing *Fisher v. State*, 810 N.E.2d 674, 677 (Ind. 2004)). "'We give considerable deference to appellate counsel's strategic decisions and will not find deficient performance in appellate counsel's choice of some issues over others when the choice was reasonable in light of the facts of the case and the precedent available to counsel at the time the decision was made.'" *Brown v. State*, 880 N.E.2d 1226, 1230 (Ind. Ct. App. 2008) (quoting *Taylor v. State,* 717 N.E.2d 90, 94 (Ind. 1999)), *trans. denied*. We must consider the totality of an attorney's performance and "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy." *Reed*, 856 N.E.2d at 1195-96.

The Indiana Double Jeopardy Clause provides, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. We analyze alleged violations of this clause pursuant to our Supreme Court's opinion in *Richardson v. State,* 717 N.E.2d 32 (Ind. 1999). In *Richardson,* our Supreme Court held that "two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." 717 N.E.2d at 49 (emphasis in original). Ware contends that his convictions constituted double jeopardy under the "actual evidence" test.

Under the "actual evidence" test, a defendant must demonstrate a *reasonable possibility* that the evidentiary facts used by the fact-finder to establish the essential

elements of one offense may also have been used to establish all of the essential elements of a second challenged offense. *Bunch v. State*, 937 N.E.2d 839, 845-46 (Ind. Ct. App. 2010) (citing *Richardson*, 717 N.E.2d at 53), *trans. denied*. Double jeopardy is not violated when the evidentiary facts establishing the essential elements of one offense also establish only one or even several, but not all, of the essential elements of a second offense. *Moore v. State*, 882 N.E.2d 788, 794 (Ind. Ct. App. 2008) (citing *Smith v. State*, 872 N.E.2d 169, 176 (Ind. Ct. App. 2007), *trans. denied*).

In the present case, the State charged Ware with Class D felony criminal recklessness in Count 3 for shooting a firearm at or in the direction of Latwon Johnson ("Johnson") and with Class D felony criminal recklessness in Count 4 for shooting a firearm at or in the direction of Jude Sayles ("Sayles"). Ware was also charged with murder in Count 1 for knowingly killing Dunson by shooting a firearm at him and with Class C felony battery for knowingly touching Dyer in a rude, insolent, or angry manner by shooting at him with a firearm and hitting him in the leg. A person commits Class D felony criminal recklessness if the person "recklessly, knowingly, or intentionally performs an act that creates a substantial risk of bodily injury to another person" while armed with a deadly weapon. Ind. Code § 35-41-2-2(b), (c). A person commits murder if the person knowingly or intentionally kills another human being. Ind. Code § 35-42-1-1(1). A person commits Class C felony battery if the person knowingly or intentionally touches another person in a rude, insolent, or angry manner and that touching results in serious bodily injury to any other person or if it is committed by means of a deadly weapon. Ind. Code § 35-42-2-1(a)(3).

The facts supporting Ware's conviction for murder demonstrate that Ware killed Dunson by shooting Dunson with a firearm, and the facts supporting Ware's conviction for Class C felony battery demonstrate that Ware caused serious bodily injury to Dyer by shooting him with a firearm. The evidence at trial showed that Johnson and Sayles were both close to Dunson and Dyer when Ware shot his firearm at them, so Ware's convictions for Class D felony criminal recklessness were supported by the evidence that Ware shot his firearm in the direction of all four of the boys, endangering both Johnson and Sayles. Because different victims were involved in the murder and the battery and in each count of criminal recklessness, different evidence was used to convict Ware of each of the crimes. In situations where the defendant harms or threatens harm to distinct victims, double jeopardy is not violated by multiple convictions. *Bunch*, 937 N.E.2d at 847; s*ee also Bald v. State*, 766 N.E.2d 1170, 1172 n.4 (Ind. 2002) (double jeopardy is not violated where convictions arise from situation where separate victims are involved); *Rawson v. State*, 865 N.E.2d 1049, 1055 (Ind. Ct. App. 2007) (where convictions arise from situation where separate victims are involved, no double jeopardy violation exists), *trans. denied*. Ware's convictions did not violate double jeopardy, and therefore his appellate counsel was not ineffective failing to raise a double jeopardy issue on direct appeal. We conclude that Ware did not receive ineffective assistance of either his trial or appellate counsel, and the post-conviction court did not err in denying his petition for post-conviction relief.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.