## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 31 2016, 6:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia M. Carter
Law Office of Cynthia M. Carter, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Fernando Trujillo,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

October 31, 2016

Court of Appeals Case No.
49A05-1601-PC-6

Appeal from the
Marion Superior Court

The Honorable
Mark D. Stoner, Judge
The Honorable
Jeffrey L. Marchal, Magistrate

Trial Court Cause No.
49G06-0301-PC-8310

**Kirsch, Judge.**

[1] Fernando Trujillo ("Trujillo") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition. On appeal, he raises the following consolidated and restated issue for our review: whether Trujillo received ineffective assistance of his trial counsel.

[2] We affirm.

## Facts and Procedural History

[3] During the interlocutory appeal from the grant of the State's request to use child hearsay, this court found the following facts, in part:

> In January 2003, C.M. lived in an apartment on 38th Street in Indianapolis with her mother, Reyna Gregerios ("Mother"), her father, Alvaro Murietta ("Father"), her then eight-year-old brother, and Trujillo.[1] The apartment had two bedrooms, and Mother, Father, and their two children slept in one, while Trujillo slept in the other. On Sunday, January 12, Father, who usually worked at night, received a call from his employer asking him to report at 5:00 a.m. Monday morning. Mother was also scheduled to work on Monday from 7:00 a.m. to 3:30 p.m. On Sunday evening, Mother called her sister-in-law, Imelda Lopez, to see if she could watch C.M. during the day. Lopez agreed. On Monday morning, Mother told her son, who got on the school bus around 8:30 a.m., to walk C.M. to Lopez's house before he left for school. Mother then left for work while C.M. was still asleep. C.M.'s brother and Trujillo were also in the apartment.

---

[1] Trujillo is Father's cousin.

Mother arrived home from work around 4:00 p.m. After C.M. got back to the apartment, she and Mother were in their bedroom talking. Mother asked C.M., as she always did when Lopez watched her during the day, whether she had eaten and whether she was treated well. C.M. then told Mother that Trujillo, whom C.M. called "Huero," had grabbed her, laid her on his bed, took off her clothes, and put his "pilin" in her "culito."[2] C.M. also told Mother that it had hurt and that it had happened that same morning before her brother had left for school. After C.M. stated that she felt "dirty," Mother removed C.M.'s underwear and smelled a strange odor.

Father arrived home around 9:00 p.m., and Mother told him about C.M.'s allegations. After Father talked to C.M., Mother and Father took her to St. Vincent's Hospital for an examination. Mother spoke with police officers there, but the officers did not interview C.M. Instead, the officers told Mother and Father to take C.M. to the Family Advocacy Center on the afternoon of January 15. The family returned home during the early morning hours of January 14. That day, C.M. appeared upset but played with her brother. Father asked C.M. about the incident again because he did not believe her story, and C.M. told him the same version of events she had told her mother.

On the afternoon of January 15, two days after the alleged incident, Mother, Father, C.M., her brother, and Trujillo all went to the Family Advocacy Center. Indianapolis Police Detective Cathy Gregory interviewed C.M. outside the presence of other family members, and that interview was videotaped. Tatiana Mitchell, a bilingual caseworker with the Marion County Office of Family and Children ("OFC"), was also present during the interview and served as an interpreter. Initially, C.M. was quiet

---

[2] The record showed that C.M. only spoke Spanish at the time and that when she used the word "pilin," she was referring to penis and when she used the word "culito," she meant vagina.

and fairly nonresponsive. Then, after Mitchell asked C.M. whether she knew why she was there, C.M. spontaneously stated that Trujillo had taken off her clothes and placed the tip of his "pilin" in her "culito." Mitchell told Detective Gregory that the literal translation for "culito" was "little butt." Mitchell then asked C.M. to clarify what she meant by "culito," and C.M. repeatedly pointed to her vaginal area. She also stated that this happened on Trujillo's bed and that it hurt a little bit.

On June 25, 2003, the trial court conducted a Child Hearsay Hearing under Indiana Code Section 35-37-4-6. After C.M. testified, the court determined that she was not competent to testify at trial. However, after hearing testimony from Mother, Mitchell, and Detective Gregory, the court determined that Mother could testify at trial regarding C.M.'s hearsay statements and that C.M.'s videotaped interview [was] also admissible.

[4]     *Trujillo v. State*, 806 N.E.2d 317, 319-20 (Ind. Ct. App. 2004) ("*Trujillo I*"). On interlocutory appeal, this court determined that the trial court did not abuse its discretion when it applied Indiana Code section 35-37-4-6, the "protected person" statute, to C.M.'s statement to her mother and to C.M.'s videotaped statement to Detective Gregory and ruled that those matters were admissible. *Id*. at 329.

[5]     After the interlocutory appeal, Trujillo was found guilty of Class A felony child molesting following a bench trial. The facts supporting Trujillo's conviction as set forth by this court in an unpublished opinion on his direct appeal are as follows:

Four-year-old C.M. lived in an apartment with her mother, Reyna, her father, Alvaro, her eight-year-old brother, A.M., and

her twenty-five-year-old cousin Trujillo. Reyna, Alvaro, A.M., and C.M. shared one of the apartment's two bedrooms, and Trujillo used the other bedroom. On January 13, 2003, Alvaro, who usually worked nights and cared for C.M. during the day, had to work during the day. Accordingly, Reyna made arrangements for C.M.'s aunt, who lived in the same apartment complex, to watch C.M. Before she left for work that morning, Reyna instructed A.M. to walk C.M. to their aunt's apartment on his way to the bus stop. Trujillo was at the apartment with the children when Reyna left for work.

When A.M. was ready to leave, he went to Trujillo's room where C.M. was playing on the bed. Trujillo instructed A.M. to leave without C.M. and indicated that he would take C.M. to their aunt's apartment later. Trujillo took off his belt, hit the wall, and told A.M. to go to school, scaring him. Trujillo told A.M. to lock the front door behind him.

Trujillo then grabbed C.M., laid her on the bed, "lowered" her clothing, and inserted his penis into her vagina. *Tr.* p. 87. That night, when Reyna returned home from work, C.M. reported the incident to her. C.M.'s parents then took her to the hospital.

On January 16, 2003, the State charged Trujillo with one count of Class A felony child molesting. The State later added an additional count of Class C felony child molesting. On June 16, 2005, a bench trial began, after which the trial court found Trujillo guilty of the Class A felony charge. The trial court sentenced Trujillo to thirty years.

*Trujillo v. State*, No. 49A05-0508-CR-439, slip op. at 2-3 (Ind. Ct. App. Apr. 28, 2006), *trans. denied* ("*Trujillo II*"). Petitioner's conviction was affirmed by this court on direct appeal. *Id*. at 8.

[6] Following his direct appeal, Trujillo filed a petition for post-conviction relief, raising a claim of ineffective assistance of trial counsel. Specifically, Trujillo claimed that his trial counsel was ineffective "during the child hearsay hearings, the trial, and the sentencing" because his attorneys "failed to investigate the case, failed to consult expert witnesses, failed to present exculpatory evidence, . . . . failed to submit impeaching evidence[,] . . . failed to object to improper testimony[,] and failed to properly examine and confront the State's witnesses." *Appellant's App*. at 18.

[7] At the post-conviction relief evidentiary hearing, Trujillo presented the testimony of Jose Salinas ("Salinas"),[3] who represented Trujillo during the child hearsay proceedings and subsequent interlocutory appeal. At the time of the hearing, Salinas did not have the records from his representation of Trujillo due to the fact that his old office was damaged during a tornado and a lot of his files were "destroyed or scrambled." *P-CR Tr*. at 9. Salinas testified that he recalled having concerns regarding the interpreter's translations during C.M.'s initial statement to the police. *Id*. at 10-11. Based on his knowledge as a Spanish speaker, Salinas believed that the interpreter's summaries of C.M.'s statements were not complete and "weren't verbatim." *Id*. at 13. Salinas did not remember who his successor counsel was or if he ever spoke with the attorney who took over Trujillo's case. *Id*. at 17. Todd Woodmansee ("Woodmansee")

---

[3] Salinas is now a Marion County Superior Court judge.

was subsequently appointed to represent Trujillo after Salinas ended his representation. At the post-conviction relief hearing, Woodmansee testified that he remembered "very little" about Trujillo's case. *Id*. at 23.

[8] Additionally, Trujillo introduced copies of the lower court records, Woodmansee's file, and a Department of Child Services ("DCS") file related to the incident at the hearing. The State objected to the admission of the DCS file, arguing that it would not have been available to trial counsel and was not relevant. *Id*. at 32. The trial court admitted the file over the State's objection. At the conclusion of the hearing, the trial court issued its findings of fact, conclusions thereon and ordered Trujillo's petition for post-conviction relief denied. Trujillo now appeals.

## Discussion and Decision

[9] Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

Trujillo argues that the post-conviction court erred in denying his petition for post-conviction relief because he received ineffective assistance from both of his trial attorneys. When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and

Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[12] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998)). Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *Shanabarger v. State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015)*.* "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id*. (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)).

[13] Trujillo first contends that his first trial counsel, Salinas, was ineffective in his representation of Trujillo during the pretrial proceedings and the Child Hearsay

hearing. Trujillo asserts that Salinas failed to use additional information at the Child Hearsay hearing that would have proven that C.M.'s statements were not as reliable as the State represented them to be. Trujillo argues that Salinas was ineffective for failing to assert that several statements contained in the nurse's notes from C.M.'s initial assessment, which were admitted at the Child Hearsay hearing, called into question the reliability of the child hearsay. Trujillo also claims that Salinas was ineffective for failing to present any of the healthcare professionals who had firsthand knowledge of the investigation as expert witnesses to contradict the testimony given by Mother. Trujillo argues that Salinas was ineffective for failing to present evidence, contained in the DCS file admitted at the post-conviction hearing, that would have highlighted a discrepancy between the evidence reported to the DCS interviewer and the statement Mother made to the police. Trujillo asserts that if Salinas had presented this evidence, the outcome of his case would have been different.

[14] The Protected Person Statute, Indiana Code section 35-37-4-6, allows for the admission of otherwise inadmissible hearsay evidence relating to specified crimes, the victims of which are deemed "protected persons." *Tyler v. State*, 903 N.E.2d 463, 465 (Ind. 2009). A statement or videotape that is made by a protected person, and which would otherwise be inadmissible hearsay, may be admitted in a criminal action involving a sex offense if it concerns a material element of the charged offense and if the court finds sufficient indicia of reliability and the protected person testified at trial or is found to be unavailable. Ind. Code § 35-37-4-6(e).

[15]     Initially, we note that if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice that course should be followed. *Manzano*, 12 N.E.3d at 325. In order to prove prejudice stemming from ineffective assistance, a defendant must show a reasonable probability that, but for counsel's unprofessional errors, the result of his criminal proceeding would have been different. *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). Here, Trujillo's arguments amount to the contention that, if Salinas has presented certain evidence, the trial court would not have allowed the child hearsay to be introduced and there is a reasonable probability the outcome of his case would have been different. We disagree.

[16]     At Trujillo's trial, the only child hearsay admitted from the child hearsay hearing was Mother's recitation of what C.M. told her when she made her initial accusations against Trujillo. *Appellant's App*. at 88, 135. C.M. testified at trial in English as to what Trujillo had done to her. Following her testimony, the trial court did not allow the videotaped statement of C.M's statement to the police to be admitted, finding it cumulative. *Id*. at 88. In finding Trujillo guilty, the trial court specifically stated that it was basing its guilty determination on C.M.'s in-court testimony and not on the child hearsay. *Id*. at 91. The trial court noted, "C.M. is to be believed . . . [and] her testimony is worthy of credit." *Id*. It went on to find that Mother's recitation of what C.M. reported to her was "really of no moment" because it did not contribute to the trial court's verdict. *Id*. Therefore, as the child hearsay was not used in the trial court's finding of guilt, we conclude that Trujillo has not met his burden to

show a reasonable probability that the result of his criminal proceeding would have been different and that he was prejudiced by Salinas's performance.

[17] Trujillo next argues that his second trial counsel, Woodmansee, was ineffective in his representation of Trujillo during the bench trial. Trujillo contends that Woodmansee failed to make an adequate investigation into his case. Specifically, Trujillo asserts that Woodmansee failed to: (1) cross-examine Mitchell, the translator who was present when C.M. made a statement to the police; (2) utilize C.M.'s medical records to show that the allegations may have been coached; (3) cross-examine Mother regarding whether C.M.'s brother was in the apartment at the time of the molestation; (4) interview Lopez or call her as a witness; and (5) interview C.M.'s brother and object to his testimony regarding the discrepancy as to whether he was present in the apartment when the molestation occurred. *Appellant's Br.* at 25-27. Trujillo claims that based on these substantial errors, prejudice is apparent.

[18] "While it is undisputed that effective representation requires adequate pretrial investigation and preparation, it is well settled that we should resist judging an attorney's performance with the benefit of hindsight." *McKnight v. State*, 1 N.E.3d 193, 200 (Ind. Ct. App. 2013). Therefore, when deciding a claim of ineffective assistance for failure to investigate, we apply a great deal of deference to counsel's judgments. *Id.* at 201. Establishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced. *Woods v. State,* 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied*, 550 U.S. 930 (1999).

This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result. *McKnight*, 1 N.E.3d at 201.

[19] Trujillo has failed to establish that he suffered any prejudice due to Woodmansee's decisions not to interview C.M.'s brother and Lopez, how to cross-examine certain witnesses, and in what manner to use the medical records. Trujillo merely states that Woodmansee made certain alleged mistakes in his representation of Trujillo, but not how the outcome of his trial would have been different. In finding Trujillo guilty at the conclusion of the bench trial, the trial court stated that it was basing its guilty determination on C.M.'s testimony, which the trial court found to be credible. *Appellant's App.* at 91. Trujillo fails to explain how further investigation into the testimony of C.M.'s brother, Lopez, Mother, and Mitchell or the use of medical records would have resulted in a different outcome at trial. Additionally, although Trujillo claims Woodmansee was ineffective for failing to discuss the case with Salinas when Woodmansee took over the case, he has not shown any prejudice stemming from this lack of discussion. We, therefore, conclude that Trujillo has not met his burden of establishing that Woodmansee was ineffective. The post-conviction court did not err in denying his petition for post-conviction relief.

[20] Affirmed.

[21] May, J., and Crone, J., concur.