**Pierre FISHER, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 82A05–0704–PC–215.**

Court of Appeals of Indiana.

Dec. 28, 2007.

Transfer Denied March 13, 2008.

---

Pierre D. Fisher, Michigan City, IN, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Marjorie Lawyer–Smith, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

ROBB, Judge.

*Case Summary and Issues*

Pierre Fisher appeals the post-conviction court's denial of his petition for post-conviction relief relating to his convictions following a jury trial of criminal deviate conduct, a Class A felony, and robbery, a Class C felony, and his conviction following a guilty plea of rape, a Class B felony. On appeal, Fisher argues he received ineffective assistance of counsel at his trial and his guilty plea for rape was invalid. Con-

cluding that Fisher has failed to establish that he received ineffective assistance of counsel and that the trial court properly accepted Fisher's guilty plea, we affirm.

*Facts and Procedural History*

The underlying facts with regard to Fisher's criminal deviate conduct and robbery convictions appear in this court's opinion on direct appeal affirming Fisher's convictions.

> The evidence reveals that Fisher posed as a paperboy and got a $20 bill from the victim, who was 78 years old. He then asked to use her telephone to gain entrance to her house. Once inside, he attacked her and pulled her into the guest room. He then took off her clothes and placed his fingers in her vagina. The victim pleaded with him to stop and leave her alone, and Fisher told her he would not leave until he got more money. He told her several times that he had a gun, but she never saw it. He then emptied her purse and took three or four dollars and some change before he left.

*Fisher v. State,* No. 82-A01-9107-CR-218, slip. op. at 2, 582 N.E.2d 481 (Ind.Ct.App., Nov. 19, 1991). With regard to Fisher's rape conviction, at Fisher's guilty plea hearing, he admitted that he knowingly compelled another victim to have sexual intercourse with him, without the victim's consent, by using force and the imminent threat of force.

Fisher was a juvenile when he committed the offenses, but was tried as an adult following a juvenile waiver hearing. On February 28, 1991, the jury found Fisher guilty of criminal deviate conduct and robbery. On March 25, 1991, the trial court held a sentencing hearing and sentenced Fisher to forty years for criminal deviate conduct and six years for robbery, with the sentences running concurrently. On May

3, 1991, Fisher pled guilty to rape in front of Special Judge Robert Matthews, pursuant to a plea agreement under which the State agreed to recommend a sentence of twelve years. Judge Matthews found a factual basis for the plea and ordered a pre-sentence investigation report, but withheld entering a judgment of conviction. On May 22, 1991, Judge Young accepted the plea, entered a judgment of conviction, and sentenced Fisher to twelve years, to be served concurrent to Fisher's criminal deviate conduct and robbery sentences.

Fisher appealed, arguing that the victim's identification of him at his juvenile waiver hearing was unduly suggestive, thereby making his waiver to adult court improper, and that the trial court improperly admitted physical evidence. This court affirmed in the previously cited unpublished opinion. Subsequent to this appeal, Fisher filed numerous motions. Relevant to the instant issues, on April 11, 2005, this court issued an order granting Fisher permission to file a Successive Petition for Post–Conviction Relief. On June 29, 2005, Fisher filed a motion for a copy of the record. The Indiana Public Defender subsequently filed a Motion to Rescind Order for Copy of Record, alleging that Fisher had received a copy of the record on September 28, 1992, and that Fisher remembers receiving part of the record at that time. This court granted the motion to rescind, but in a subsequent order indicated "that if the trial court finds that it needs the complete record from [Fisher's] original appeal in order to rule on [Fisher's] Successive Petition for Post–Conviction Relief, this Court will honor a request from the trial court to send to the trial court the record from [Fisher's] direct appeal." Appellant's Appendix at 82. The trial court did not make such a request.

Fisher's petition raised four issues: (1) ineffective assistance of trial counsel; (2) whether the trial court improperly accepted his guilty plea to rape; (3) whether his sentence for criminal deviate conduct was manifestly unreasonable; and (4) ineffective assistance of appellate counsel. The post-conviction court denied his petition in an order along with findings of fact and conclusions of law. Fisher now appeals the post-conviction court's order with respect to his claims of ineffective assistance of trial counsel and the trial court's acceptance of his guilty plea.

*Discussion and Decision*

Initially, we note that the State claims that Fisher failed to satisfy his burden to the post-conviction court by failing to present a record of the prior proceedings. However, it is plain that Fisher made several motions attempting to obtain a copy of the record. This Court issued an order indicating that it would provide a copy of the record if the post-conviction court determined it needed the record. After this court issued this order, Fisher sent the post-conviction court a letter requesting that it obtain a copy of the record from this court. The post-conviction court denied this request, finding "that it does not need a copy of the complete record from the appellant's original appeal." Appellant's App. at 11. We fail to see how Fisher can be held at fault for failing to supply the post-conviction court with the record under these circumstances.

The State also argues that as Fisher did not introduce a copy of this court's previous opinion on Fisher's direct appeal and Fisher's initial post-conviction relief petition, he cannot establish that he is not barred, on grounds of res judicata, from raising the issues of ineffective assistance of counsel or improper acceptance of guilty plea at this time. The fundamental problem with the State's argument is that it is

not Fisher's burden to establish his claims are not barred by res judicata; instead, as res judicata is an affirmative defense, it was the State's burden to raise this argument and demonstrate that his claims are barred. *See* Ind. Trial Rule 8(C); *Lake Monroe Reg'l Waste Dist. v. Waicukauski*, 501 N.E.2d 466, 469 (Ind.Ct.App.1986) (recognizing that "[r]es judicata had been considered over the years as a defense which must be affirmatively pleaded before the second tribunal[,]" and that the party claiming res judicata has the burden of proof at trial). Regardless, Fisher did not raise any of the instant issues on direct appeal. *See Fisher*, No. 82–A01–9107–CR–218, 582 N.E.2d 481.

▇ Fisher asks that we take judicial notice of the record on his original appeal. The law in Indiana is murky as to whether we may do so. Courts may take judicial notice of a fact "not subject to reasonable dispute in that it is ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Ind. Rule of Evidence 201(a)(2). This court has previously held that "a trial judge may take judicial notice of the pleadings and filings in the very case that is being tried," but that "facts recited within the pleadings and filings that are not capable of ready and accurate determination are not suitable for judicial notice." *Brown v. Jones*, 804 N.E.2d 1197, 1202 (Ind.Ct.App.2004), *trans. denied.*

Our supreme court has held that, as a general rule, a post-conviction court may not take judicial notice of the transcript from the original proceeding. *Bonds v. State*, 729 N.E.2d 1002, 1006 (Ind.2000). However, our supreme court has also noted, "[t]here are some cases wherein the courts have taken judicial notice of proceedings in other cases in the same or other courts.... [F]or reasons apparent in each case the court is justified in noticing judicially the proceedings in other causes." *State v. Hicks*, 525 N.E.2d 316, 317 (Ind. 1988) (quoting 29 Am.Jur.2d Evidence § 59); *see also Douglas v. State*, 800 N.E.2d 599, 605 n. 4 (Ind.Ct.App.2003) (characterizing the holding in *Hicks* as allowing a post-conviction court to take judicial notice only when "exceptional circumstances exist"), *trans. denied; Moser v. State*, 562 N.E.2d 1318, 1321 (Ind.Ct. App.1990) (interpreting *Hicks* to establish the rule that "the particular situation justifying such action apparently depends upon the procedural developments in each case"). This is not a case, however, in which we must determine whether the trial court properly took judicial notice of the record. Not only did the trial court not take such judicial notice, it affirmatively declined the opportunity to examine the record. We are thus left with a different issue—whether an appellate court can take judicial notice of a record that the trial court did not consider.

It does not appear that an Indiana appellate court has squarely addressed this issue.[1] As this court has recognized that although, "generally, a trial court may not take judicial notice of prior proceedings, the rule for judicial notice at the appellate level is not quite as straightforward." *Sharp v. State*, 569 N.E.2d 962, 966 (Ind.

---

1. Other states do allow an appellate court reviewing the denial of a petition for post-conviction relief to take judicial notice of the record of the preceding direct appeal. *See Rash v. State*, 968 So.2d 552, 554 (Ala.Crim. App.2006); *In re Torres*, 177 Vt. 507, 861 A.2d 1055, 1057 (2004); *State v. Parmar*, 263 Neb. 213, 639 N.W.2d 105, 108 (2002), *cert. denied*, 537 U.S. 845, 123 S.Ct. 183, 154 L.Ed.2d 72 (2002); *Pace v. State*, 826 So.2d 996, 997 (Fla.Ct.App.2001); *Hodge v. State*, 749 S.W.2d 423, 424 (Mo.Ct.App.1988); *Helton v. State*, 530 S.W.2d 781, 783 (Tenn.Crim.App.1975); *State v. Deats*, 83 N.M. 154, 489 P.2d 662, 665 (N.M.Ct.App.1971); *Smith v. State*, 199 Kan. 293, 429 P.2d 103, 106 (1967).

Ct.App.1991), *trans. denied.* As we noted in *Sharp*, this court has previously examined the record of a prior appeal in interpreting that case's holding. *See id.* (citing *Hudson v. Hudson*, 484 N.E.2d 579, 582 (Ind.Ct.App.1985)). Also, our supreme court has cited with approval the statement of the United States Supreme Court that it "has the right to examine its own records and take judicial notice thereof in regard to proceedings formerly had therein by one of the parties to the proceedings now before it." *Ind. Revenue Bd. v. Hansbrough*, 275 Ind. 426, 417 N.E.2d 311, 316 (1981) (quoting *De Bearn v. Safe Deposit & Trust Co., of Baltimore*, 233 U.S. 24, 32, 34 S.Ct. 584, 58 L.Ed. 833 (1914)); *see also United States v. Pink*, 315 U.S. 203, 216, 62 S.Ct. 552, 86 L.Ed. 796 ("[T]here is no reason why we cannot take judicial notice of the record in this Court of [a related case]."). Appellate courts are also permitted to examine the record of a previous appeal in the same case when applying the "law of the case" doctrine. *See Dickason v. Dickason*, 219 Ind. 683, 40 N.E.2d 965, 968 (Ind.1942). And in *Cunningham v. Hiles*, 435 N.E.2d 49, 53 (Ind. Ct.App.1982), this court took judicial notice of the facts relayed at a hearing, the transcript of which had not been before the trial court, noting that "[t]o so judicially

notice our records ... is within our prerogative." *See also Moxley v. Ind. Nat'l Bank*, 443 N.E.2d 374, 375 n. 1 (Ind.Ct. App.1982) (taking judicial notice of the record in a related appeal pending at the time in the court of appeals). Finally, our supreme court has held that in the context of an appeal from a denial of post-conviction relief, it is proper to take judicial notice of proceedings relating to the petitioner's attorney's disbarment. *Chandler v. State*, 261 Ind. 161, 166–67, 300 N.E.2d 877, 880 (1973).

Therefore, it is clear that Indiana appellate courts take judicial notice of records on file with that court in relation to a related proceeding. Still, we note the apparent inequity of taking judicial notice of a record with which Fisher had at least some familiarity, but to which the State did not have access at the post-conviction hearing or in preparing its appellate brief. It would be even more inequitable, however, to deny Fisher the ability to effectively appeal the post-conviction court's decision based on that court's decision that it did not need the record. We conclude that, based on the facts of this case, we may examine the record from Fisher's direct appeal to the extent it contains factual information not subject to reasonable dispute.[2] *See* Ind. R. Evid. 201; *In re Tor-*

---

2. We take this opportunity to note that on December 17, 2007, Odyssey, a new computerized case management system, was implemented in Monroe county, pursuant to a project of our Supreme Court's Judicial Technology Automation Committee ("JTAC"). *See* "December 'Go Live' Set For First Odyssey CMS Sites," *at* www.in.gov/judiciary/jtac/news/cms-golive2007.html (last visited December 19, 2007). This system will allow courts to exchange and share information with other courts and state agencies, pursuant to JTAC's belief that "it is in the best interest of Indiana's citizens, trial courts, court clerks, law enforcement officials, and lawyers that all of Indiana's courts maintain their records in a statewide computerized case management system that connects courts across county lines and connects courts with local and state entities that need court information." JTAC, "FAQs on Policy Statement," at www.in.gov/judiciary/jtac/docs/0605–faq–policy.pdf (last visited December 19, 2007). The implementation of this project demonstrates the growing trend of allowing trial courts to access and consider reliable information stored in court or other government records. We speculate that along with this access will undoubtedly come more permissive use of judicial notice, as it would be fairly unproductive to allow courts to access this information but not consider it.

*res,* 861 A.2d at 1057 ("The transcript at issue is exactly the type of document subject to judicial notice under our [rule of evidence substantially similar Indiana Rule of Evidence 201] because it is an accurate record of sworn plea colloquy testimony.").

## I. Ineffective Assistance of Trial Counsel

### A. Standard of Review

Post-conviction proceedings are civil in nature. *Stevens v. State,* 770 N.E.2d 739, 745 (Ind.2002), *cert. denied,* 540 U.S. 830, 124 S.Ct. 69, 157 L.Ed.2d 56 (2003). Therefore, to prevail, petitioners must establish their claims by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); *Stevens,* 770 N.E.2d at 745. When appealing a denial of a petition, a defendant appeals from a negative judgment. *Burnside v. State,* 858 N.E.2d 232, 237 (Ind.Ct.App.2006). Therefore, petitioners must convince this court that the evidence, taken as a whole, leads unmistakably to a conclusion opposite that reached by the post-conviction court. *Stevens,* 770 N.E.2d at 745. We will review a post-conviction court's findings of fact under a clearly erroneous standard, but will review its conclusions of law de novo. *Burnside,* 858 N.E.2d at 237.

### B. Fisher's Assistance at Trial

When reviewing ineffective assistance of counsel claims, Indiana courts use the two-pronged test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002). Under the first prong, the petitioner must establish that counsel's performance was deficient by demonstrating that his representation "fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment." *McCary v. State,* 761 N.E.2d 389, 392 (Ind.2002). Under this prong, we will assume that counsel performed adequately, and will defer to counsel's strategic and tactical decisions. *Smith v. State,* 765 N.E.2d 578, 585 (Ind.2002). "Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective." *Douglas v. State,* 800 N.E.2d 599, 607 (Ind.Ct. App.2003), *trans. denied.* Under the second prong, the petitioner must show that the deficient performance resulted in prejudice. A petitioner must show prejudice by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Wieland v. State,* 848 N.E.2d 679, 681 (Ind.Ct.App.2006), *trans. denied, cert. denied,* —— U.S. ——, 127 S.Ct. 595, 166 L.Ed.2d 442 (2006). We will find a reasonable probability exists if our confidence in the outcome is undermined. *Douglas,* 800 N.E.2d at 607. If we can resolve a claim of ineffective assistance of counsel based on lack of prejudice, we need not address the adequacy of coun-

---

We also note that in 2000, our supreme court adopted family court rules for temporary use by trial courts participating in the Indiana Supreme Court Family Court Project. *See In re Family Court Project Rules,* No. 94200–0401–MS–19 (Ind., Aug. 3, 2006), *available at* www.in.gov/ judiciary/orders/other/2006/family–court–rules–080306.pdf. Pursuant to these rules, a family court "may take judicial notice of any relevant orders or Chronological Case Summary (CCS) entry issued by any Indiana Circuit, Superior, County, or Probate Court." *Id.* at 5. Additionally, parties to a family court proceeding are permitted access to all cases within the proceeding, except that in the case of confidential records in a case to which they are not a party, parties must file a written petition identifying relevancy and need. *Id.* These rules also demonstrate the increasing liberal allowance of judicial notice and use of court records in related proceedings.

sel's performance. *Wentz*, 766 N.E.2d at 360.

■ Fisher argues that his trial attorney was ineffective for failing to present the following evidence to the jury: 1) the victim, when handed a picture of Fisher at the juvenile waiver hearing, indicated that she did not know who the person in the picture was; 2) a police officer testified at the juvenile waiver hearing that no fingerprints were found on the victim's doorknob or telephone; 3) Greta Gray, Jim Gray, and Rick Baumeyer, three potential witnesses relating to Fisher's rape conviction, failed to pick Fisher out of a lineup.

■ "While defense counsel is not ineffective when he fails to present all evidence in support of the defense position, counsel's representation cannot be deemed adequate or effective when he fails to produce any evidence at all from available sources in support of a defense." *Williams v. State*, 508 N.E.2d 1264, 1268 (Ind.1987) "[T]he decision whether to utilize exculpatory evidence . . . is a matter of trial strategy." *Reynolds v. State*, 536 N.E.2d 541, 545 (Ind.Ct.App.1989), *trans. denied.*

Here, Fisher's counsel both cross-examined the witnesses against Fisher and presented evidence in his defense. We initially note that Fisher's counsel did introduce evidence that Greta Gray, who testified at trial that a young man had come to their house posing as a newspaper delivery boy, had failed to pick Fisher out of a police line-up. *See* Trial Transcript at 251–52. She also cross-examined Greta Gray and the victim regarding their identifications of Fisher on the day of the crime, thereby calling into doubt the State's identification

evidence before the jury. *Cf. Davenport v. State*, 689 N.E.2d 1226, 1231–32 (Ind.1997) (holding a defendant cannot show prejudice based on trial counsel's failure to introduce a witness's prior inconsistent statements where trial counsel cross-examines witness regarding inconsistencies), *corrected in part on reh'g*, 696 N.E.2d 870. Fisher has failed to demonstrate that had his counsel introduced evidence that Gray's husband and Baumeyer also failed to pick out Fisher, the result of his trial would have been different. Indeed, as the State did not call Jim Gray or Baumeyer as witnesses linking Fisher to the crime, the fact that they failed to identify him would have been of minimal value. Similarly, Fisher's counsel cross-examined the victim regarding her identification of Fisher, adequately putting the credibility of her identification before the jury. Fisher has failed to demonstrate either deficient performance or prejudice based on counsel's failure to introduce evidence of the victim's failure to recognize a picture of Fisher.[3]

Additionally, substantial evidence existed of Fisher's guilt. After the attack, the victim called police and described her assailant and indicated that he had fled on a multicolored girl's ten-speed bicycle. At trial, a police officer testified that he found Fisher in the vicinity shortly after the attack, wearing clothes matching the description given by the victim, at a video store, outside of which was a multi-colored girl's ten-speed bicycle. Fisher was bleeding from the knee, again in accordance with information from the victim. This officer took Fisher back to the victim's house, where the victim positively identified Fisher as her assailant. The victim

---

**3.** We note that this event allegedly occurred at Fisher's juvenile waiver hearing, the transcript of which was not included in the record of Fisher's direct appeal. Therefore, the only evidence before us that the victim actually failed to recognize Fisher in a picture is an affidavit filed by Fisher.

indicated that her assailant had folded up a twenty-dollar bill, which he had stolen from her, and placed it in his right sock. While at the victim's house, officers searched Fisher and found a folded-up twenty-dollar bill in his right sock. Police then took Fisher to the Grays' house, where Greta identified Fisher as the person who had come to her door that day posing as a paperboy. The State also introduced blood-testing evidence relating to three different blood samples found at the crime scene. Fisher's blood was compared to the three samples for common characteristics, and testing revealed that Fisher's blood and one sample shared common characteristics present in roughly seven out of ten-thousand African–Americans; Fisher's blood and another sample shared characteristics present in roughly one in five-hundred; and Fisher's blood and a third sample shared characteristics present in roughly one in fifty. Based on the evidence presented against him, and considering that Fisher's counsel vigorously attempted to discredit the State's identification witnesses through cross-examination and the introduction of a failed line-up, we conclude Fisher has failed to demonstrate that he was prejudiced by his counsel's failure to introduce the additional identification evidence to which he points. *See Coleman v. State,* 741 N.E.2d 697, 703 (Ind.2000) (trial counsel's failure to introduce evidence of two hairs found on rape victim that did not belong to the defendant was not prejudicial "because of the magnitude of other evidence pointing to [the defendant's] guilt"), *cert. denied,* 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001).

 In regard to trial counsel's failure to introduce evidence relating to the absence of fingerprints on the victim's doorknob or telephone, we initially note that the State itself introduced testimony that the police were unable to lift fingerprints from the victim's phone. *See* Trial Tr. at 95. The officer testified that the inability to lift fingerprints from the phone was not significant, as a phone is handled by many people and used on a continuous basis, resulting in fingerprints being "piled one on top of the other and you just don't lift good prints off of them." *Id.* at 96. The logical conclusion is that the officer would have had the same explanation for his inability to lift fingerprints from the doorknob. Fisher has simply failed to establish any prejudice resulting from the absence at trial of evidence relating to the lack of fingerprint evidence.

We conclude Fisher has failed to meet his burden of establishing a reasonable possibility that the result of his trial would have been different had his trial counsel introduced the evidence to which he now points. Therefore, we conclude he has failed to establish ineffective assistance of counsel.

## II. Acceptance of Guilty Plea

 Fisher argues the trial court improperly accepted his guilty plea because Judge Young failed to advise Fisher of his rights at the hearing at which he entered a judgment of conviction. "To be valid, a guilty plea must be made knowingly, voluntarily and intelligently." *Dillehay v. State,* 672 N.E.2d 956, 959 (Ind.Ct.App. 1996). A trial court must determine that a defendant is aware of his right to a trial by jury, right against self-incrimination, and right to confrontation. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *Dewitt v. State,* 755 N.E.2d 167, 171 (Ind.2001). We will vacate a conviction if the record does not indicate the defendant was advised of these rights. *Odom v. State,* 647 N.E.2d 377, 381 (Ind.Ct.App.1995), *trans. denied.* Under Indiana statute, the trial court shall also inform a defendant of the potential

aggregate sentence he may receive for the crime or crimes charged, that he will lose his right to possess a firearm if convicted of a crime of domestic violence, and that the court is bound by the terms of any plea agreement it accepts. Ind.Code § 35–35–1–2. The failure of the trial court to advise the defendant of any of these circumstances will warrant reversal only when a defendant shows prejudice. *Odom,* 647 N.E.2d at 381; *see* Ind.Code § 35–35–1–2(c) ("Any variance from the requirements of this section that does not violate a constitutional right of the defendant is not a basis for setting aside a plea of guilty.").

The post-conviction court denied Fisher's claim, finding Fisher "has neither offered into evidence nor made any specific citation to the transcripts or record in asserting his claim that the trial Court improperly accepted his plea of guilty." Appellant's App. at 306. As discussed above, Fisher's failure to cite to the record is directly attributable to the post-conviction court's failure to request this court to transmit the record. Further, Fisher cited to the transcript of the guilty plea hearing in arguing that the trial court improperly accepted his guilty plea without advising him of his constitutional rights. *See* Appellant's App. at 228. As the basis of Fisher's claim is that the record contains no evidence of advice, we fail to understand how Fisher should have more specifically cited to something he claimed was absent. As we have recognized, "if the record of the guilty plea hearing does not affirmatively disclose advisement of [the rights a defendant is waiving] the petitioner has satisfied his burden since a knowing, intelligent and voluntary entry of a guilty plea cannot be presumed from a silent record." *Brown v. State,* 435 N.E.2d 582, 583 (Ind.Ct.App. 1982).[4]

▮ Further, in finding that Fisher was advised of his rights, the post-conviction court erroneously relied on the chronological case summary, which included the notation, "court advises the defendant of constitutional rights and files acknowledgment of rights with the court." As we have indicated, "a docket entry is an insufficient record to support a guilty plea because it only reflects conclusions and not whether the defendant was properly advised of his rights." *Graham v. State,* 468 N.E.2d 604, 605 (Ind.Ct.App.1984), *trans. denied.*

Although the post-conviction court's findings do not support its conclusion, it remains Fisher's burden on appeal to demonstrate that the evidence as a whole indicates the post-conviction court should have reached the opposite conclusion. *Hall,* 849 N.E.2d at 469. The record of the hearing before the special judge indicates that the special judge orally informed Fisher of his right to a jury trial, right against self-incrimination, and right to confront the witnesses against him. Appellant's App. at 257. Fisher indicated that he understood these rights and was giving them up by pleading guilty. At the sentencing hearing, the trial court noted Fisher had already pled guilty and a factual basis had been established, but judgment had not yet been entered. Fisher complains that the trial court did not advise him of his rights when it formally entered judgment against him. We conclude this omission was not fatal.

---

4. A "silent" record is not the same as a missing record, and a petitioner faced with a missing record is still required to prove he was not informed of his rights. *Hall v. State,* 849 N.E.2d 466, 470 (Ind.2006). We also note that the complete record was not "missing" in this case, as all parties knew that this court had such a record. However, it was in a sense "missing" to Fisher, as his attempts to obtain a copy were rebuffed.

In *Carter v. State*, 739 N.E.2d 126 (Ind. 2000), the trial court advised the defendant of his rights, found a factual basis, and took the defendant's guilty plea under advisement. At the sentencing hearing, the defendant contradicted his earlier statements and proclaimed his innocence. Our supreme court held the fact that the trial court had not formally accepted the plea at the guilty plea hearing to be immaterial, and that the defendant's later proclamation of innocence did not prevent the trial court from formally entering the guilty plea. *Id.* at 131 (recognizing that under these circumstances, the defendant must request permission to withdraw his plea). Similarly, we conclude that in determining whether a defendant was properly informed of his rights, "formal acceptance of the guilty plea is not the proper focus for determining the trial court's authority to accept that plea." *Carter v. State*, 724 N.E.2d 281, 285 (Ind.Ct.App.2000), *aff'd*, 739 N.E.2d 126 (Ind.2000). Instead, the proper focus should be on the time the defendant actually pled guilty. In this case, it is clear that Fisher was fully informed of his rights at the time he pled guilty.

Also, it is not necessary " 'that the record of the guilty plea proceeding show that the accused was formally advised that the entry of his guilty plea waives certain constitutional rights,' nor does *Boykin* require that the record contain a formal waiver of these rights by the accused." *Dewitt v. State*, 755 N.E.2d 167, 171 (Ind.2001) (quoting *State v. Eiland*, 707 N.E.2d 314, 318 (Ind.Ct.App.1999), *opinion adopted*, 723 N.E.2d 863 (Ind.2000)). We will vacate a conviction only "if the defendant did not know or was not advised at the time of his plea that he was waiving his *Boykin* rights." *Id.* (emphasis in original). The record in this case clearly indicates that Fisher knew he was waiving his constitutional rights both at the time he entered

his plea and at the time the trial court formally accepted the plea and entered a judgment of conviction. Therefore, we conclude the trial court properly entered judgment of conviction based on Fisher's guilty plea.

### Conclusion

We conclude that Fisher has failed to establish that he received ineffective assistance of counsel and that the trial court did not improperly accept his guilty plea. The judgment of the post-conviction court denying Fisher's petition is affirmed.

Affirmed.

KIRSCH, J., and BARNES, J., concur.