## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 23 2018, 5:34 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Deidre R. Eltzroth
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Stanley Short,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

February 23, 2018

Court of Appeals Case No.
69A05-1707-PC-1530

Appeal from the
Ripley Circuit Court

The Honorable
Jeffrey L. Sharp, Special Judge

Trial Court Cause No.
69C01-1405-PC-3

**Kirsch, Judge.**

[1] Stanley Short ("Short") appeals the denial of his petition for post-conviction relief, contending that the post-conviction court erred in denying his petition.

On appeal, he raises the following restated issue for our review: whether Short received ineffective assistance of his trial counsel on the basis that his trial counsel failed to object to certain evidence that he claims was admitted in violation of Indiana Evidence Rule 404(b).

We affirm.

## Facts and Procedural History

The facts supporting Short's convictions as set forth by this court on his direct appeal are as follows:

> Short and L.C. married in 2010, but a short time later, L.C. filed for divorce. On May 25, 2011, L.C. came home from taking her children to school and found Short inside her house. Short was holding a hammer and said to L.C, "You're gonna be with me. I'm gonna have you one last time." *Tr.* at 64. L.C. told Short to leave, and then she started to dial 911 on her cell phone. Short refused to leave and grabbed her cell phone from her. L.C. tried to leave the house, but Short had locked the door. L.C. started screaming, and Short hit her in the side of the head with the hammer. Short then held the hammer up and said, "If you don't have sex with me one last time, I'm gonna really hurt you." *Id.* at 66. L.C. then put her hands up and said, "I'll do what you want. Don't hit me again[.]" *Id.*

> Short proceeded to place L.C. in handcuffs and forced her upstairs into a bedroom. Short told L.C. to take her pants off, which she did. But when she could not get her shirt off, he cut it off with a box cutter. Short then handcuffed L.C. to the bed and raped her. At some point, he stopped and told L.C. that she was going to perform oral sex on him. Short then put his penis in front of L.C.'s mouth, but she told him that she could not do it.

L.C. told Short that she felt like she was going to vomit. L.C. begged Short to get something to stop the bleeding on her head, which he did. Short then started looking through pictures of L.C. on her cell phone, and he accused her of having sex with someone else, which she denied. Short then performed oral sex on L.C. while she was still handcuffed to the bed.

After approximately one and a half hours, L.C. told Short that her mother was supposed to come over to her house that day and the two of them were going to run errands together. L.C. asked him whether she could call her mother to cancel their plans, and he agreed. Short dialed the phone for L.C. Her father answered, and she told him to tell her mother "not to come over. Something's come up." *Id.* at 77. L.C. was not able to convey anything to her father to indicate that she was in trouble. After the phone call, Short was concerned that L.C.'s mother might still come by the house looking for L.C. Short then used duct tape, handcuffs, and zip ties to secure L.C. to the bed, and he went outside to move her car out of sight.

When Short came back after moving the car, L.C. told Short that she loved him and that they could be together if he would let her go. She asked him whether she could get cleaned up, and he untied her. Short was holding a hammer and watching L.C. while she took a bath. L.C. begged Short to put the hammer down, but he refused. L.C. then told Short that she had to go pay her electric bill that day or else her electricity was going to be shut off for nonpayment. Short did not believe L.C, but he listened while she called the electric company and confirmed that she had to pay the bill that day. L.C. told Short that she would not try to run away if he went with her to pay the bill, and he finally agreed.

L.C. drove while Short sat in the front passenger seat of her car. First, L.C. withdrew money from the drive-through window at the bank near her house. Then L.C. started crying and told Short

that she needed to get some makeup from a nearby store. L.C. convinced him that she needed to look nice or else someone would "notice something's wrong." *Id*. at 89. Inside the store, L.C. tried to think of a way to get help without Short hurting her or someone else, but she did not come up with a plan. They bought some makeup and left the store. Then, as L.C. was driving, with Short in the passenger seat, L.C. saw a "great, big, huge" man and two other men standing near a hot dog stand. *Id*. at 91. So L.C. pulled the car up next to the men, jumped out of the car, and ran "right behind the biggest one." *Id*. L.C. then began screaming, "He just raped me," and she showed the men the blood on her head. *Id* . She pleaded for help and asked them to call the police. Short fled the scene, and it was several days before police found him, at L.C.'s residence, and arrested him.

The State charged Short with rape, as a Class A felony; criminal deviate conduct, as a Class A felony; criminal confinement, as a Class B felony; battery, as a Class C felony; and domestic battery, as a Class A misdemeanor. A jury found him guilty as charged. The trial court entered judgment of conviction accordingly and sentenced Short as follows: thirty years for rape (Count One); thirty years for criminal deviate conduct (Count Two); fifteen years for criminal confinement (Count Three); six years for battery (Count Four); and one year for domestic battery (Count Five). The trial court ordered that the sentences on Counts One and Two would run consecutively, and the sentences on Counts Three through Five would run concurrent with each other and consecutive to the sentences on Counts One and Two, for an aggregate term of seventy-five years.

*Short v. State*, No. 69A01-1206-CR-268, *1-*2 (Ind. Ct. App. Feb. 26, 2013), *trans. denied*.

[4]     Short filed a direct appeal with this court alleging double jeopardy and sentencing issues. A panel of this court affirmed his convictions and sentence in a memorandum decision. *Id*. After filing a pro se petition for post-conviction relief, an amended petition was filed on October 14, 2016, by the State Public Defender on Short's behalf.

[5]     An evidentiary hearing was held on Short's petition, at which he presented the testimony of his trial counsel, John L. Kellerman ("Kellerman"). Kellerman testified that he had done thirty-five to forty criminal jury trials, had been a Ripley County public defender, and had been the judge of the Batesville City Court. *P-CR Tr.* at 7-8. Kellerman's trial strategy was to show the jury that Short was involved in a "tumultuous consensual relationship" with L.C. and that the conduct that L.C. alleged was rape was actually consensual sex that occurred in the course of that tumultuous relationship. *Id*. at 4. Kellerman met with Short twelve to fifteen times in preparing a defense, and he visited Short roughly once a month until a firm trial date was set, at which time he visited Short once a week. *Id*. at 9. Kellerman testified that he believed that the trial court's order on the State's motion in limine sufficiently addressed the presentation of evidence regarding prior bad acts. *Id*. at 10. Kellerman stated that, although the State's motion did not expressly articulate whether witnesses could testify regarding Short's prior bad acts, Kellerman believed that the trial court addressed that concern in substance at the hearing on the motion in limine. *Id*. Kellerman further recalled that, at trial, the State did not specifically ask L.C. about any prior bad acts by Short, but that she had made

some unsolicited statements that were non-responsive. *Id.* Additionally, Kellerman testified that when L.C. made comments about Short's previous incarceration, "she brought it up in the context of him having been in and out of jail when she met him," and that she did not specifically discuss the criminal conduct that resulted in incarceration. *Id.* at 5. Kellerman further expounded on his strategy concerning L.C.'s comments in the following testimony:

> [W]hen somebody testifies to it as kind of a side or as just a running part of their dialogue, it has been my experience for many years, over many trials, that many times, as long as it is not something that they bring emphasis to themselves, you don't want to point it out to the jury as something that might be significant by bringing the proceedings to a halt with an objection. It has been my experience, if it's just in the normal run of things that aren't given special significance by the witness, then it might go in one ear and out the other, well the jury, they pay attention when the attorneys jump up and say I object to that and especially if you are trying to have something, especially if you are then trying in instruct them, ignore what was just said. You know, when you see objectionable behavior coming, you try to stop it before hand, such as if a person is trying to, is obviously getting ready to testify to hearsay, you object that before they can say it. Once the cat is out of the bag, I didn't want to draw extra attention to it.

*Id.* at 5-6.

[6]     At the conclusion of the hearing, the post-conviction court issued its order denying Short post-conviction relief. Short now appeals.

# Discussion and Decision

[7] Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied,* 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E.2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied,* 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to convictions. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[8] When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses. *Lindsey v. State*, 888 N.E.2d 319, 322 (Ind. Ct. App. 2008), *trans. denied*. We accept the post-conviction court's findings of fact

unless they are clearly erroneous, and no deference is given to its conclusions of law. *Fisher*, 878 N.E.2d at 463.

[9] Short argues that the post-conviction court erred in denying his petition for post-conviction relief because he received ineffective assistance of trial counsel. Specifically, he contends that his trial counsel was ineffective for failing to object to testimony by L.C. regarding prior bad acts by Short. Short claims that this evidence was admitted in violation of Indiana Evidence Rule 404(b) and that, if Kellerman had objected to the evidence, such objections would have been sustained and the evidence would not have been admitted. Short asserts that the admission of this evidence damaged his credibility, which was crucial to this case, and he was, therefore, prejudiced by Kellerman's failure to object to the testimony.

[10] When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668 (1984). *Perry v. State*, 904 N.E.2d 302, 308 (Ind. Ct. App. 2009) (citing *Pinkins v. State,* 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), *trans. denied*), *trans. denied*. First, the defendant must show that counsel's performance was deficient. *Id*. This requires a showing that counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. *Id.* Second, the defendant must show that the deficient performance resulted in prejudice. *Id.* To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's

unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

[11] Further, counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Williams v. State*, 771 N.E.2d 70, 73 (Ind. 2002). We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. *Perry*, 904 N.E.2d at 308 (citing *Whitener v. State*, 696 N.E.2d 40, 42 (Ind. 1998)). Isolated omissions or errors, poor strategy, or bad tactics do not necessarily render representation ineffective. *Shanabarger v. State*, 846 N.E.2d 702, 708 (Ind. Ct. App. 2006), *trans. denied*. The two prongs of the *Strickland* test are separate and independent inquiries. *Manzano v. State*, 12 N.E.3d 321, 325 (Ind. Ct. App. 2014), *trans. denied*, *cert. denied*, 135 S. Ct. 2376 (2015). "Thus, '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'" *Id.* (quoting *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001), *cert. denied*, 537 U.S. 839 (2002)). To demonstrate ineffective assistance of counsel for failure to object, a defendant must prove that an objection would have been sustained if made and that he was prejudiced by counsel's failure to make an objection. *McKnight*, 1 N.E.3d 193, 202 (Ind. Ct. App. 2013) (citing *Wrinkles v. State*, 749 N.E.2d 1179, 1192 (Ind. 2001), *cert. denied*, 535 U.S. 1019 (2002)).

[12] During Short's trial, L.C. testified regarding the tumultuous relationship between her and Short, Short's prior incarceration, his criminal history, and his previous suicide attempts. Although Kellerman did not object during trial to any of this testimony, he testified at the post-conviction hearing that his defense strategy at trial was to show that, what L.C. claimed was rape, was actually consensual intercourse that occurred in the context of a stormy relationship. *P-CR Tr.* at 4. The evidence concerning the parties' tumultuous relationship and Short's previous suicide attempts were relevant to this strategy. Kellerman testified that, as to the testimony regarding Short's criminal history and prior incarceration, he chose not to object so as not to emphasize the non-responsive testimony and that, in his experience, it was better not to object to such testimony and bring attention to it. *Id*. at 5. Therefore, Kellerman's decisions not to object to L.C.'s testimony were reasonable strategic choices, and his performance was not deficient.

[13] Based on the record before us, even assuming that any objections to L.C.'s testimony would have been sustained by the trial court, Short has not shown that he was prejudiced by Kellerman's failure to object. At trial, the State presented sufficient independent corroborating evidence of L.C.'s report that Short attacked her with a hammer and raped her. A registered nurse who treated L.C. in the emergency room testified regarding L.C.'s injuries and that she performed a rape kit on L.C., confirming that L.C. and Short had intercourse, which was a fact that Short conceded. *Trial Tr. Vol. I* at 245-46, 249-50; *Trial Tr. Vol. II* at 251. L.C. had bleeding and an abrasion on the left

side of her head and red marks on her wrists and ankles as if she had been tied up. *Id*. at 250-51. The State presented photographs that showed L.C.'s injuries. *State's Exs*. 16-19, 22-24, 30-41. The State also presented testimony from a police officer that, when he came in contact with L.C., she was very emotional, upset, and crying and that she had blood on her head, a bruise on her neck, marks consistent with handcuffs visible on her wrists, and ligature marks on her ankles. *Trial Tr. Vol. II* at 284.

[14] The evidence discovered at the crime scene and presented at trial further corroborated L.C.'s account. The officers who investigated the crime scene found blood at the residence, a shirt that had been cut away, rope tied to the bed, a piece of duct tape that appeared to have lip prints left on it from lipstick, and zip ties. *Id*. at 289-90. One of the officers testified that the state of the residence and the items of evidence discovered there corroborated "a lot of what [L.C.]" reported to police in the emergency room. *Id*. at 290. Further, the State presented evidence that Short had escaped from the county jail with another inmate after being arrested on these charges. *Trial Tr. Vol. I* at 228-30. Such actions demonstrated Short's consciousness of guilt. Due to the substantial independent evidence of Short's guilt, we agree with post-conviction court's conclusion that Short did not demonstrate a reasonable probability that, but for his trial counsel's failure to object, the result of the proceeding would have been different. We conclude that the post-conviction court properly found that Short did not receive ineffective assistance of his trial counsel, and therefore, it did not err in denying Short's petition for post-conviction relief.

Affirmed.

Bailey, J., and Pyle, J., concur.