## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 11 2018, 5:46 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Matthew L. Major
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Matthew L. Major, | June 11, 2018 |
| *Appellant-Petitioner,* | Court of Appeals Case No. 53A04-1711-PC-2650 |
| v. | Appeal from the Monroe Circuit Court |
| State of Indiana, | The Honorable Marc R. Kellams, Judge |
| *Appellee-Respondent.* | Trial Court Cause No. 53C02-1512-PC-2449 |

**Kirsch, Judge.**

Matthew L. Major ("Major") appeals the denial of his petition for post-conviction relief contending that the post-conviction court improperly denied Major' petition for post-conviction relief under Post-Conviction Rule 1, section 4(f) for failure to include factual allegations in support of his claim for ineffective assistance of counsel.

We affirm.

## Facts and Procedural History

The facts supporting Major's convictions as set forth by this court on his direct appeal are as follows:

Prior to their marriage Major and his then-girlfriend Sarah Moore ("Sarah") had a daughter, S.M., born in 2004. The couple married in 2005, when Sarah was only sixteen. The couple had another child, a son, H.M., born in 2011. Sarah filed for divorce in 2012, and the divorce was finalized in early 2013. Major and his ex-wife shared custody of the children. Following the divorce, Major lived with his girlfriend, Rebecca Gillespie ("Rebecca"), in Bloomington, along with Rebecca's two young children, aged nine and three.

After the divorce, Sarah noticed that S.M.'s behavior began to change; her grades at school declined, and the nine-year-old child began to wet the bed several times per week. S.M. apparently got along well with her father and his new girlfriend but disliked it when her father drank too much, which occurred more often following the divorce.

In the summer of 2013, Sarah noticed blood in S.M.'s underwear and assumed the girl had started menstruating. Later that summer, she noticed that S.M. was starting to grow pubic hair. She therefore told S.M. that she was going through puberty and that having a period

meant that it was possible for her to become pregnant. S.M. then turned pale and informed her mother that Major had been touching her inappropriately.

S.M. stated that Major had taken her on a walk at a park and told her to take off her shorts. Major then told her to bend over, and he placed his penis in S.M.'s "bottom." *Tr.* at 82. Major moved his body back and forth while saying, "f* *k." *Id.* When they returned to the car, he told S.M. to get in the driver's seat, which he then reclined so that she could lie down. Major then placed his penis in S.M.'s vagina and began to move back and forth. H.M., who had been sleeping in a car seat, woke up and began to cry. Major told the young child to shut up. S.M. began to cry and asked Major to stop. Instead, he struck her and told her to be quiet or he would "do it harder." *Id.* at 100-01. When he was finished, Major told S.M. that what he had done was a "daddy-daughter secret" that she should not tell to anyone. *Id.* at 83.

On another occasion, Major told S.M. to take off her shorts and underwear when she was in bed. He then waited until she was asleep, crawled on top of her and placed his penis in S.M.'s "bottom part," which she identified as not her vagina. *Id.* at 84. When Major had finished, S.M. went to the bathroom and noticed that she was bleeding. On yet another occasion, Major placed two of his fingers in S.M.'s vagina. When S.M. told Major that this hurt, he told her to be quiet. S.M. also testified that when she was in the car with her father, Major would take photographs of her genitals or "play[ ] around" with her genital area. During another incident, Major told S.M. to go to Rebecca's room when Rebecca was not at home. Major exposed his penis, and told his daughter to manipulate him. He also made S.M. perform oral sex on him until he ejaculated.

During another incident in the car, Major unzipped his pants, removed his penis and told S.M. to fondle him. He also pushed her head down and forced her to perform oral sex on him. He threatened to "knock [S.M.]'s teeth down [her] throat" if she used her teeth on his penis. *Id.*

at 95.  In all, S.M. testified that Major had put his penis in her vagina on "three or four" occasions, and identified four locations where such behavior had occurred.  *Id.* at 117.

After telling her mother about Major's actions, Sarah took S.M. to the hospital, where she was examined by Dr. Roberta Hibbard ("Dr. Hibbard").  Dr. Hibbard noticed redness in S.M.'s genital area and a small adhesion in her labia.  The police also took a mattress from Rebecca's apartment.  Five cuttings from the mattress tested positive for seminal fluid; two of these cuttings had sperm cells with DNA that matched Major; one cutting had DNA matching Rebecca; and two others had a mixture of DNA from at least three people, from which Major, Rebecca, and S.M. could not be excluded.

On August 9, 2013, the State charged Major with six counts of Class A felony child molesting, Class C felony vicarious sexual gratification, Class D felony intimidation, and Class A misdemeanor possession of marijuana.  A jury trial was held from February 18 to February 21, 2014.  At the trial, the State called Rebecca as a witness and had her identify three photos of female genitalia as her own.  Rebecca claimed that Major had taken the photos with his phone when they were in the car.  Major objected to the admission of these photos on grounds of relevance, but the trial court overruled his objection when the State indicated that the relevance of the photos would become clear based upon further testimony.  The State then called Dr. Hibbard to testify regarding the photos.  Dr. Hibbard, however, was unable to state with any certainty whether the photos were of Rebecca's genitals or S.M.'s. After a sidebar discussion, the trial court then struck the three photos from evidence and instructed the jury to disregard them.  Major moved for a mistrial, which the trial court denied.

At the conclusion of trial, the jury found Major guilty of six counts of Class A felony child molesting but acquitted on the other counts.  The trial court found as aggravating that Major had a prior criminal history and that Major, as S.M.'s father, had abused a position of trust over a period of time.  The trial court then sentenced Major to concurrent

terms of thirty years each on each count. The trial court ordered Counts I-III to be served concurrently and Counts V and VI to be served concurrently. However, the trial court ordered Counts I-III, Count IV, and Counts V-VI to be served consecutively, for an aggregate term of ninety years.

*Major v. State*, No. 53A01-1404-CR-158, slip op. at 2-5 (Ind. Ct. App. Dec. 22, 2014), *trans. denied*.

[4] Major appealed, arguing that the trial court erred in denying his motion for mistrial and that the trial court abused its discretion by ordering some of his sentences to run consecutively. *Id*. at 5-10. After this court affirmed the trial court's judgment, Major sought post-conviction relief with a claim of ineffective assistance of counsel. *Appellant's App. Vol. 2* at 5. Major did not include any specific facts in his petition, but indicated that facts would be developed in an amended petition. *Id*. at 6. The post-conviction court appointed the State Public Defender's Office to represent Major; however, counsel withdrew from Major's case in September 2017. *Id.* at 2-3. In October 2017, Major filed a notice with the post-conviction court that he was proceeding pro se. *Id.* at 3. On October 13, 2017, the post-conviction court issued an order denying post-conviction relief, finding that Major had failed to set forth any factual allegations in his petition for post-conviction relief. *Id.* at 4, 24-25. Major now appeals.

## Discussion and Decision

[5]　Post-conviction proceedings do not afford the petitioner an opportunity for a super appeal, but rather, provide the opportunity to raise issues that were unknown or unavailable at the time of the original trial or the direct appeal. *Ben-Yisrayl v. State*, 738 N.E.2d 253, 258 (Ind. 2000), *cert. denied*, 534 U.S. 1164 (2002); *Wieland v. State*, 848 N.E. 2d 679, 681 (Ind. Ct. App. 2006), *trans. denied*, *cert. denied*, 549 U.S. 1038 (2006). The proceedings do not substitute for a direct appeal and provide only a narrow remedy for subsequent collateral challenges to conviction. *Ben-Yisrayl*, 738 N.E.2d at 258. The petitioner for post-conviction relief bears the burden of proving the grounds by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5).

[6]　When a petitioner appeals a denial of post-conviction relief, he appeals a negative judgment. *Fisher v. State*, 878 N.E.2d 457, 463 (Ind. Ct. App. 2007), *trans. denied*. The petitioner must establish that the evidence as a whole unmistakably and unerringly leads to a conclusion contrary to that of the post-conviction court. *Id*. We will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion. *Wright v. State*, 881 N.E.2d 1018, 1022 (Ind. Ct. App. 2008), *trans. denied*.

[7]　Here, the post-conviction court denied Major's petition pursuant to Post-Conviction Rule 1, section 4(f). *Appellant's App. Vol. 2* at 25. This provision

states, in relevant part, "If the pleadings conclusively show that petitioner is entitled to no relief, the court may deny the petition without further proceedings." P-C.R. 1(4)(f).

[8] Major contends that the post-conviction court erred in denying his petition for post-conviction relief because he alleged ineffective assistance of counsel. In arguing this Major relies on *Tooley v. State*, 156 Ind. App. 636, 297 N.E.2d 856, 857-58 (1973), which held that where there was a general allegation of ineffective counsel by applicant for post-conviction relief and an unverified general denial thereof by state, with no supporting material filed by either party, a genuine issue of material fact existed as to effectiveness or adequacy of counsel requiring an evidentiary hearing. Major asserts that his petition for post-conviction relief included a general allegation of ineffective counsel, and the State responded with a general denial of the allegation; therefore, since neither party provided supporting material in their respective petition and answer, an evidentiary hearing must be held to find facts and resolve the conflict between the parties.

[9] However, since *Tooley*, our Supreme Court stated in *Sherwood v. State*, that "without specific factual allegations in support of the claim of inadequacy of representation no evidentiary hearing is required." *Sherwood v. State*, 453 N.E.2d 187, 189 (Ind. 1983) (holding that an evidentiary hearing was required because the appellant stated a specific factual allegation to support his claim that counsel's representation was inadequate); *see also Kelly v. State*, 952 N.E.2d 297, 299 (Ind. Ct. App. 2011) (holding that evidentiary hearing was required

because petitioner provided specific allegations in his post-conviction relief petition regarding the trial counsel's inadequate performance during his competency and sentencing hearing). Therefore, because Major did not provide specific factual allegations to support his ineffective assistance of counsel claim in his petition for post-conviction relief, nor did he amend the petition to include facts regarding his counsel's inadequate performance, the post-conviction court did not err in denying Major's petition.

[10] Additionally, Major also argues that the post-conviction court erred in denying his motion entitled "Motion for Transcript Partial Trial Proceedings." *Appellant's Br.* at 8-10. "Petitioners who are indigent and proceeding in forma pauperis shall be entitled to production of guilty plea and sentencing transcripts at public expense, *prior to a hearing*, if the petition is not dismissed." P-C.R. 1(9)(b). In that motion, Major requested that the post-conviction court provide a transcript of voir dire from his trial. *Appellant's App. Vol. 2* at 20. The CCS entry indicates that Major's "Notice of Present Inability to Investigate and Amend the Pro Se Petition for Post-Conviction Relief" and "Motion for Transcript Partial Trial Proceedings" were received by the post-conviction court on October 13, 2017. *Id*. at 4. The CCS entry further indicates that the post-conviction court issued its order denying post-conviction relief on the same date. Because there were no pending proceedings at the time Major's motion for a partial transcript was received, the post-conviction court did not err in denying the motion.

Affirmed.

Baker, J., and Bradford, J., concur.